AUGUST TIMM

*v.*

CARTER H. HARRISON, Mayor.

*Filed at Mt. Vernon February 15, 1884.*

1. INTOXICATING LIQUORS—*act of 1883, concerning the licensing of dram-shops—constitutionality—subject embraced in its title.* The act of the General Assembly entitled "An act to restrict the power of counties, cities, towns and villages in licensing dram-shops, for providing a license to retail malt liquors separately, and for punishing persons holding such separate licenses for unlawful sale and gifts," approved June 15, 1883, is a valid and constitutional law, and the subject matter of each of its three sections is embraced in the title.

2. SAME—*application of the constitutional rule as to mode of amending a statute—License law of 1883.* The act of June 15, 1883, concerning the licensing of dram-shops, is not in violation of that clause of the constitution which declares that "no law shall be revived or amended by reference to its title only, but the law revived, or section amended, shall be inserted at length," as such act does not profess to be amendatory of any other act. Again, section 2 of the act, aside from the change in the amount of the license fee, contains all that is contained in section 3 of the Dram-shop act, with the

38—109 ILL.

further provision, "that in all cases where a license is granted for the sale of malt liquors only, such board may grant the same upon payment into the county treasury of a sum not less than $150 per annum for each license," which is a full compliance with the constitutional provision that the section amended shall be inserted at length in the new act. It is not necessary to declare in the new act that the section, as amended, is inserted at length.

3. SAME—*rule of uniformity in taxation, as applied to liquor dealers.* Under section 1, article 9, of the constitution, which provides that "the General Assembly shall have power to tax peddlers, * * * liquor dealers," etc., in such manner as it shall, from time to time, direct by general law, uniform as to the class upon which it operates, the term "liquor dealers," is used in a generic sense, and it is competent for the legislature to classify the different kinds of liquor dealers, and impose differential taxes upon such classes; and the rule of uniformity will not be violated so long as the tax imposed is the same upon all the members of the particular class.

4. SAME—*extent of the power to regulate the liquor traffic.* In the exercise of the police power the legislature may prohibit altogether the sale of intoxicating liquors, and consequently may attach such conditions to the allowance of their sale as it sees fit to prescribe.

5. STATUTES—*as to the subject being embraced in the title.* It is a sufficient compliance with the requirement of section 13, article 4, of the constitution, if the subject of the enactment is expressed in its title. It is not necessary to state in the title the effect of the subject matter, as, its amending or repealing some prior law.

6. The repeal of a statute on a given subject is properly connected with the subject matter of a new statute on the same subject; and therefore a repealing section in a new statute is valid, notwithstanding the title is silent on that subject.

7. SAME—*as to the mode of amendment, under the constitution.* The mischief intended to be remedied by the constitution, which provides that in amending a statute the law or section amended shall be inserted at length, was that of the amendment of statutes by reference to their titles only, where the amendment in many cases could not be understood without looking into the section amended.

8. Where a new act on a subject is complete in itself, and entirely intelligible, showing of itself just what it is, and its enactment, without reference to any prior law, it will not contravene the constitutional provision. An act complete in itself is not within the mischief designed to be remedied by such provision.

APPEAL from the Circuit Court of Cook county; the Hon. John G. Rogers, Judge, presiding.

Mr. Melville W. Fuller, Mr. Harry Rubens, and Mr. Edward Roby, for the appellant.

Mr. F. S. Winston, and Mr. James McCartney, Attorney General, (with whom were Mr. J. L. High, and Messrs. C. C. & C. L. Bonney, as *amici curiæ,*) for the appellee.

Mr. Chief Justice Sheldon delivered the opinion of the Court:

This was an application, made November 3, 1883, for a writ of *mandamus* to compel the mayor of Chicago to issue to the petitioner a license for the sale of intoxicating liquors, upon tender of $103, the amount alleged to be the proper license fee under the ordinances of the city of Chicago, the petitioner alleging full compliance with the requirements of the city ordinances. Defendant, by his answer, admitted such tender and compliance with the city ordinances, but justified his refusal to grant the license, under an act of the General Assembly, entitled "An act to restrict the power of counties, cities, towns and villages in licensing dram-shops, to provide for granting a license to retail malt liquors separately, and for punishing persons holding such separate license, for unlawful sale and gifts," approved June 15, 1883, in force July 1, 1883, by which act cities, towns and villages are prohibited from granting licenses for the keeping of dram-shops except upon payment of a sum not less than at the rate of $500 per annum, or not less than $150 per annum when the license is for the sale of malt liquors only. Petitioner excepted to the answer, averring that the act of the General Assembly in question was unconstitutional. The court overruled the exception and dismissed the petition, and the petitioner appealed. The record thus presents the sole question of the constitutionality of the act of the General Assembly in question.

It is insisted that the act of June 15, 1883, is in effect an amendment of chapter 43 of the Revised Statutes of 1874, known as the "Dram-shop act," and that it violates the provision of section 13, article 4, of the constitution of 1870, that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title," in that the title of the act does not profess to make such amendment. It is said that if an existing law is amended, the fact that the new act is in amendment of the prior law must be expressed in the title of the new act, because such fact is the "subject" of the new law. The subject matter of each of the three sections of the act of June 15 is embraced in the title. If such subject matter operates to amend or to repeal any prior law, that will be but the effect of the subject matter; and it is only the subject which the constitutional provision requires to be expressed in the title, and not the effect thereof. This precise question we regard as determined by the decision in *The People* v. *Wright,* 70 Ill. 388. The court there say of the act which they were, called upon to construe: "Although that act does not, in terms, profess to be an amendment of the charter of the city of Chicago, it is manifest that such was its necessary effect. It is entitled 'An act to establish a board of police in and for the city of Chicago, and to prescribe their powers and duties.' It requires the organization of an executive department of the municipal government of the city, to be known as the 'board of police of the city of Chicago,' and to this board it transfers the control and management of the entire police of the city, and also of all public police property. Certain powers theretofore exercised by the mayor and common council are thereafter to be exercised by the board of police. * * * It (the act) became fundamental—a part of the organic law of the municipality,—in other words, an amendment of its charter; and the mere fact the act in its title does not profess to amend the city charter, is unimportant. It professes to, and does, enact that which makes new

'organic law for the city government, and this is sufficient." The act in that case was passed in 1861, but the then constitution of 1848 contained this same provision as to every private or local law,—that it should not embrace more than one subject, and that should be expressed in the title. The repeal of a statute on a given subject, it is held, is properly connected with the subject matter of a new statute on the same subject, and therefore a repealing section in the new statute is valid, notwithstanding the title is silent on that subject. (Cooley's Const. Lim. 145. And see *Burke* v. *Monroe County*, 77 Ill. 610.) We think the same may be said of an amendment by implication. In *Town of Abington* v. *Cabeen*, 106 Ill. 207, upon a review of the decisions in this State upon this question of title, this court say: "The title adopted being sufficient to apprise the legislators fairly of the general subject matter of the act, all the provisions therein fairly related to that general subject, and designed to conduce to the building of the road named, must, in the light of previous decisions of this court, be held to be fairly embraced in the title adopted."

It is claimed that this act of June 15, 1883, violates the further provision of said section 13, of article 4, of the constitution, that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length." The act of 1883 contains three sections. Section 1 forbids the granting of a license for the keeping of a dram-shop by the corporate authorities of any city, town or village, except upon payment of a sum not less that $500, except that a license for the sale of malt liquors may be granted upon payment of not less than $150. Section 2 imposes like limitations upon the exercise of the like power by county boards. Section 3 prescribes a penalty for selling liquors other than malt liquors under a license to sell malt liquors only. The act does not profess to be amendatory of any other act. Section 2 of the act, aside from

the change in the amount of the license fee to be imposed by county boards, contains all that is embraced in section 3 of the Dram-shop act, with the further provision: "*Provided*, that in all cases where a license is granted for the sale of malt liquors only, such board may grant the same upon payment into the county treasury of a sum not less than $150 per annum for each license." · So that as respects section 2 of the act of 1883, section 3 of the Dram-shop act is, with the changes above indicated, inserted at length in the former act, making, as respects section 2, a full compliance with the constitutional requirement that the section amended shall be inserted at length in the new act.

But it is said, although this be so that the section amended is inserted at length, this is not so *declared* in the act, and is treated as if it were a separate section then for the first time enacted. The constitution does not so require that such declaration should be made, but only that the section amended shall be inserted at length; and that this was done here, as respects section 2, there is no question. As to sections 1 and 3 of the act of 1883, it is not pointed out wherein they amend any prior act, except that it is said they are additional sections to the Dram-shop act, and are amendments by "addition" of that act, wherefore the act of 1883 is, in its terms, in legal effect an express amendment of the Dram-shop act, although it does not so state, either in the title or the body of the act, and the proposition is advanced that "it was essential to the validity of the act of June 15, 1883, that chapter 43 of the Revised Statutes of 1874, (the Dram-shop act,) should be republished as a part of it,—that is to say, that the new act should state at length the law as amended." It is not perceived what purpose of use, or what intent of the constitution, would be subserved by the republication of chapter 43 of the Revised Statutes as a part of the act of June 15, 1883. The mischief intended to be remedied by the constitution was that of the amendment of statutes by reference

to their titles only. Under the practice which had prevailed, to amend a previous act merely by reference to its title, and in the insertion or striking out of certain words, or the making of some substitution therein, the amendatory act, of itself, would be unintelligible, and it would require examination, and comparison with the prior act, to understand what the real purport of the amendatory act was,—hence the constitutional inhibition that "no law shall be revived or amended by reference to its title only;" and in remedy of the evil the further provision is, "but the law revived, or the section amended, shall be inserted at length in the new act." When this is done, the amendatory act will be intelligible of itself, and not require going elsewhere to understand its purport. The act in question is complete in itself, and entirely intelligible, showing of itself just what it is, and in its enactment we are of opinion that there is no contravening of the constitutional provisions named.

In *The People* v. *Mahoney*, 13 Mich. 481, in pronouncing, under a like constitutional provision, upon the constitutionality of an act having an amendatory effect by implication, Mr. Justice COOLEY, delivering the opinion of the court, says: "The act before us does not assume, in terms, to revise, alter or amend any prior act or section of an act, but, by various transfers of duties, it has an amendatory effect by implication, and by its last section it repeals all inconsistent acts. We are unable to see how this conflicts with the provision referred to. If, whenever a new statute is passed, it is necessary that all prior statutes, modified by it by implication, should be reënacted and published at length as modified, then a large portion of the whole code of laws of the State would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was." And it was held that an act complete in itself was not within the mischief designed to be remedied by this constitutional pro-

vision.   But we consider the question now under discussion, as well as the former one in respect to title, as having been determined by this court in *The People* v. *Wright*, above cited.   The court were also required in that case to construe the act of July 1, 1872, commonly known as the "mayor's bill."   The act in effect amended, in many important respects, the existing charters of cities, without purporting in its title to be an amendment, and without setting forth the sections affected or amended in the new act.   In overruling the objection that the law was, for this reason, unconstitutional, the court say:   "No particular section of any act purports to be amended by this act.   All that can be said of it in this respect is, that by implication it amends the municipal charters of cities.   It can not be held that this clause of the constitution embraces every enactment which, in any degree, however remotely it may be, affects the prior law on a given subject, for to so hold would be to bring about an evil far greater than the one sought to be obviated by this clause."

It is further contended that the act in question is in conflict with the constitution, and void, because in imposing the money payment therein named, it is not uniform as to the class upon which it operates.   The following portion of section 1, article 9, of the present constitution, is relied upon in this respect:   "But the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, inn-keepers, grocery-keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall, from time to time, direct by general law, uniform as to the class upon which it operates."   It is insisted that the money required to be paid is for revenue, and is a tax, within the intent and meaning of the constitution; that the class named in the constitution is liquor dealers; that the act in question imposes a minimum

tax of $150 on the venders of malt liquors, and $500 on the venders of other intoxicating liquors, and it is therefore not uniform as to the class upon which it operates, and hence unconstitutional. Conceding, for the purpose of the argument, that the license fee exacted by the act in question is a tax, within the meaning of the constitution, we are of opinion that the act is not in conflict with the rule of uniformity as to the class upon which it operates. The term "liquor dealers," used in the section above of the constitution, is, as we regard, used in a generic sense. There may be different classes and varieties included under the general description, "liquor dealers," and we think it is competent for the General Assembly to classify the different kinds of liquor dealers included in the general description as used in the constitution, and impose differential taxes upon such classes,—that the rule of uniformity in taxation would not be violated so long as the tax imposed is the same upon all the members of the particular class. The line of division into classes here made, based upon the sale of malt liquors as distinguished from more intoxicating drinks, if viewed as for taxation, is a quite natural and a reasonable one, and not out of harmony, in our view, with any feature of the constitution in respect of taxation. But, however, as license fees, in regulation of the traffic in intoxicating liquors, the sums required to be paid by the act in question find abundant justification in former decisions of this court: *City of East St. Louis* v. *Wehrung*, 46 Ill. 392; *East St. Louis* v. *Trustees of Schools*, 102 id. 489; *Wiggins Ferry Co.* v. *East St. Louis*, id. 560; *Howland* v. *City of Chicago*, 108 id. 496, and other cases. In the exercise of the police power the legislature might prohibit altogether the sale of such liquors, and consequently may attach such conditions to the allowance of their sale as it sees fit to prescribe.

The judgment of the court below dismissing the petition must be affirmed.

*Judgment affirmed.*